Michael Mousally *vs.* United Electric Railways Company.

NOVEMBER 17, 1937.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is an action to recover for personal injuries which were received by the plaintiff, while riding as a passenger in a trolley car of the defendant, and which, he alleged, resulted from the negligent operation of the car by the defendant's employee.   At the conclusion of the trial in the superior court the trial justice, on the motion of the defendant, directed the jury to return a verdict for the defendant on the ground that there was no evidence before the jury of such negligent operation of the car.   To this direction of a verdict the plaintiff took an exception, and the case is now before us on this exception alone.

The car on which the plaintiff was riding from the Union Station in the city of Providence towards the city of Pawtucket, was, at the time of his injury, moving in a northerly direction on the easterly of the two tracks on Pawtucket avenue, near Boutwell street and Dunnell avenue. He was

sitting in the last crosswise seat on the right side of the car. There were ten windows on that side, and the one that was next to his seat was the third from the rear vestibule of the car. The distance from the easterly curb to the easterly rail of the track was nine feet eight inches. The overhang of the car was one foot eight and one-half inches.

The accident occurred when the car was passing a stake-body motor truck, six feet wide, which was then moving in the same general direction, between the track and the easterly curb of the street. According to the testimony of its driver this truck was loaded with big timbers, which were put on it lengthwise to a height of about three feet and tied with a rope. The timbers, he testified, extended out from the rear of the truck, one of them extending out four or five feet and having a red flag on the rear end of it. As the car was passing, the end of one of the timbers went through the window next to the plaintiff, injuring him and also breaking the next window behind. When the vehicles came to a stop, some of the timbers were off the truck, on its right side. There was no evidence that any of them came off on the left side; and, as to the big timber which broke the windows, the front part of that remained on the truck. There was no evidence that the plaintiff was negligent.

The motorman of the car testified that when it was about one hundred and fifty feet back of the truck, the left wheels of the truck were about in the center of the track; that he signaled with bell and whistle; that the driver of the truck pulled over to the right as far as he could get, to the curbing; that when there was room to pass, the car started to pass the truck; that both right wheels of the truck were next to the curb and the distance between the rail and the side of the truck was about four feet; and that the estimated speed of the car was then three or four miles an hour.

On the other hand, the driver of the truck testified that when he heard the bell of the car ring, he was "just about

on the track" and he then pulled over to his right; that while he was slowly pulling over, he saw the front end of the car come up on his left and all of a sudden he got a crash and his cab almost came off; and that when the crash occurred, he was still pulling over and his front wheel was at the curb, but he "wasn't quite straightened out." His testimony tended to prove that the speed of the car was much more than four miles an hour. A passenger on the car testified that, when it came to a stop right after the accident, the rear wheels of the truck were very close to the rear step of the car, and the space between the two vehicles was about a foot.

In ruling upon the plaintiff's exception to the direction of a verdict for the defendant, we must assume that the jury, if left to decide the case, could properly have accepted all the evidence favorable to the plaintiff; and could have rejected all the evidence favorable to the defendant, at least where there was any conflict; and could have drawn from the evidence all reasonable inferences favorable to the plaintiff.

From the above-mentioned testimony of a passenger and the fact that as the front wheels of a vehicle swing towards the right, the rear wheels also go in that direction, though in a less degree, the jury, in our judgment, could reasonably have found that when the car began to pass the truck, the left rear wheel of the truck was less than a foot from the car. Moreover, it is reasonable to expect that as the front wheels of a truck are turning in a considerable degree to the right, the rear end of a timber, which projects several feet back from the rear end of the truck, will be swung to the left.

Therefore, in our opinion, the jury, by reasonable inferences favorable to the plaintiff, and not by mere guesswork, could reasonably have found that the accident in this case resulted from such a swinging to the left, thus caused, of a timber projecting backwards from the truck.

We are also of the opinion that from the evidence the jury could reasonably have found that if the motorman,

before he started to pass the truck with his car, had been exercising proper care for the protection of his passengers, he would have realized the danger of an accident happening by the swinging to the left of the rear end of a timber projecting backwards from the truck, and would not have tried to pass until both ends of the truck were close to the curb. He testified that they were, when the car started to pass; but the truck driver testified to the contrary.

The case is very similar to *Eldredge* v. *Boston Elevated Ry.*, 202 Mass. 582, 89 N. E. 1041, in which a passenger standing on the running board of an open trolley car was injured by contact with the hub of a wagon which the car was passing in a narrow street, after the motorman had repeatedly sounded the gong as a warning of the approach of the car. The court well says: "If in response to the warning the team left the track but proceeded in a course parallel with it, the safety of the passengers standing on the running board continued to be paramount to any supposed exigency that the progress of the car should not be delayed by either a full stop or a slackening of speed. The speed of the car was put by the plaintiff at ten miles, while the motorman fixed it at four miles an hour. But, whatever the speed may have been, the jury could say that both motorman and conductor knew of the narrowness of the street and the close proximity of the team to the track. If with this knowledge the car kept on before they had fully and definitely ascertained that it could go by without exposing the plaintiff to the danger of injury from the probable movements which the team must take owing to the restricted space, there was evidence for the jury of the defendant's negligence, to whom this issue also should have been submitted under appropriate instructions."

The defendant's attorney, in his brief and argument before us, relied strongly on several opinions of this court, of which *McKay* v. *Rhode Island Co.*, 113 A. 673, comes nearest to supporting his contention that in the instant case

the evidence of negligence was not sufficient "to make the matter a question of fact for the jury."

In the *McKay* case the progress of a trolley car of the defendant was impeded by the presence of a horse-drawn delivery wagon, standing on the track in front of the car and facing toward it. The motorman and conductor were well acquainted with the horse, which was not nervous or frightened by the approach of trolley cars. The motorman stopped the car and sounded his gong to call the situation to the attention of the driver of the horse, who was in a nearby house. The driver then came out and gave a command to the horse, which accordingly turned to its left and went as far as the curb, and then stopped, thus clearing the track by six to eight feet. The motorman then started up the car slowly and, as it was passing the rear of the wagon, the horse suddenly backed the wagon into the side of the car, thus causing the plaintiff's injuries. This court held that the plaintiff had failed to show any negligence by the defendant.

In that case there was no basis in the evidence from which the jury could reasonably have drawn the conclusion that an ordinary prudent man in the situation of the motorman would have realized that there was danger that the horse would suddenly back the wagon into the car. In the instant case, however, we are of the opinion that there was evidence from which the jury could reasonably have drawn the conclusion that an ordinary prudent man in the situation of the motorman would have realized the danger of an accident happening in the way in which the jury could reasonably have inferred, from the evidence, that this accident actually did happen.

Therefore, in our opinion, there was evidence for the jury that there was negligence chargeable to the defendant and that the plaintiff's injuries were caused by such negligence; and the trial justice erred in directing a verdict for the defendant.

The plaintiff's exception to the direction of a verdict for the defendant is sustained, and the case is remitted to the superior court for a new trial.

*Henry E. Crowe, Raymond E. Jordan, Thomas Hetherington,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.